IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| IN RE MENTOR CORP. OBTAPE | * MDL Docket No. 2004 |
| | 4:08-MD-2004 (CDL) |
| TRANSOBTURATOR SLING PRODUCTS | * |
| | Case No. |
| LIABILITY LITIGATION | * 4:12-cv-133 (King) |

_____

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence.  Plaintiff Linda King was implanted with ObTape and asserts that she suffered injuries caused by ObTape.  King brought product liability actions against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries.  Mrs. King also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape.  Her husband Nelson brought a loss of consortium claim.  Mentor seeks summary judgment on the Kings' claims, contending that they are time-barred under Texas law.  As discussed below, there is a genuine fact dispute on when the Kings' claims accrued, so Mentor's summary judgment motion (ECF No. 68 in 4:12-cv-133) is denied.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## FACTUAL BACKGROUND

Linda King has suffered from stress urinary incontinence since the 1970s. She had surgery to treat this condition in 1976 and again in 1986. In 2003, Mrs. King sought treatment from Dr. Kurt Meissner. Dr. Meissner diagnosed Mrs. King with stress urinary incontinence and several other conditions, including prolapse of her vagina. On May 25, 2004, Mrs. King underwent a combined procedure to treat her conditions. Dr. Meissner implanted Mrs. King with ObTape, and another doctor repaired her prolapse.

Immediately after the surgery, Mrs. King experienced pain, discharge, and bleeding. She returned to Dr. Meissner seven times over the next year, complaining of discharge, bleeding, and pain. At these follow-up visits, Dr. Meissner diagnosed Mrs.

King with infections but did not find any problem with Mrs. King's ObTape.

Mrs. King sought a second opinion from Dr. Hudnall, who "recommended that [Mrs. King] have the sling replaced." King Dep. 106:11-14, ECF No. 70-3 in 4:12-cv-133.  There is a dispute as to whether Dr. Hudnall recommended that her ObTape be removed and replaced.  According to Mrs. King, Dr. Hudnall "didn't recommend removal" of the ObTape or mention removing it, but he did tell her she "should have another [sling] put in."  *Id.* at 107:12-14. According to Mrs. King, Dr. Hudnall did not explain why.  *Id.* at 108:1-2.  There is no evidence that Dr. Hudnall told Mrs. King that there was a problem with her ObTape.  Mrs. King did not want to have another surgery, so she decided not to have another sling implanted.

In 2005, Mrs. King's OB/GYN recommended that Mrs. King consult with Dr. Jorge Preacher about her symptoms.  Dr. Preacher examined Mrs. King on seven occasions between August 2005 and June 2006.  He looked for an erosion of the ObTape but "didn't see any problems."  Preacher Dep. 116:12-25, ECF No. 70-6 in 4:12-cv-133.  Dr. Preacher did find a suture granuloma "that was creating a problem in terms of vaginal discharge and bleeding." *Id.* at 107:6-14.  On another visit Dr. Preacher explained that Mrs. King's pelvic pain could be related to an injury to Mrs. King's muscle that "could have been from constipation [or] some

kind of pelvic trauma, including her transobturator tape." *Id.* at 64:4-14. After that, Mrs. King visited Dr. Preacher four more times. In September 2005, he found another suture granuloma, which he removed. At Mrs. King's October 2005 appointment, Dr. Preacher concluded that the removal of the granuloma had resolved Mrs. King's discharge and odor symptoms. *Id.* at 73:22-75:4. On the next visit, in early June 2006, Dr. Preacher found another granuloma, but he did not find any problem with Mrs. King's ObTape. *Id.* at 76:6-19. During Mrs. King's final visit with Dr. Preacher in late June 2006, Mrs. King was angry and depressed, and she expressed frustration with Dr. Meissner and asked "how he did the sling for her." June 28, 2006 Patient Note, ECF No. 68-10. Dr. Preacher recommended that Mrs. King discuss these issues with her psychiatrist and told her that he would not see her again until "she had dealt with her anger issue with Dr. Meissner." *Id.*; Preacher Dep. 123:4-14. Dr. Preacher concluded that Mrs. King's bleeding, vaginal discharge, and infection symptoms were not related to the ObTape. *Id.* at 112:3-6. In November 2006, Mrs. King went back to Dr. Hudnall, who noted that Mrs. King was "worried that probs being caused by residual sling." Nov. 14, 2006 Patient Note, ECF No. 68-11. Dr. Hudnall examined Mrs. King and found no erosion of her ObTape. *Id.*

In 2012, Mrs. King saw a television commercial regarding mesh complications.  At that time, she concluded that her symptoms were caused by ObTape.  King Dep. 139:10-140:6.

Mrs. King is a Texas resident, and her ObTape-related treatment took place in Texas.  Mrs. King asserts claims for negligence and strict liability (design defect, manufacturing defect, failure to warn).  Mr. King asserts a loss of consortium claim.

## DISCUSSION

The Kings filed their action in this Court on June 21, 2012 under the Court's direct filing order.  The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint."  Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004.  The Kings are Texas residents, and Mrs. King's ObTape-related treatment took place in Texas.  The parties agree that Texas law applies to the Kings' claims.

Mentor contends that all of the Kings' claims are time-barred.  The parties agree that Plaintiffs' claims are subject to a two-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.003(a) (requiring that actions for personal injury be brought within two years after the claim accrues).  Texas's discovery rule applies if "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is

objectively verifiable." *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1994)).  Under the discovery rule, "a cause of action does not accrue until a plaintiff knows or, through the exercise of reasonable care and diligence, 'should have known of the wrongful act and resulting injury.'" *Id.* at 37 (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).  As the Court recently explained, a cause of action accrues in a product liability case under Texas law when the plaintiff knows or should know "of a connection between her injuries and the defendant's product." *In re Mentor Corp. ObTape Transobturator Sling Products Liab. Litig.* (Bergin), 4:13-cv-135, 2016 WL 3049491, at *2 (M.D. Ga. May 27, 2016).

Mentor argues that the Kings' claims accrued in 2005 when Mrs. King began to suspect that her symptoms were caused by ObTape.  But Mentor did not cite (and the Court did not locate) any authority suggesting that a plaintiff's mere suspicions, standing alone, are enough to trigger the Texas discovery rule. Rather, the discovery rule is triggered when the plaintiff acquires *objective facts* that would lead to discovery of a connection between the defendant's product and her injury.  In *Woodruff v. A.H. Robins Co.*, 742 F.2d 228 (5th Cir. 1984) (per curiam), for example, the Fifth Circuit determined that the plaintiff's cause of action did not accrue under Texas Law until

6

1981, when she learned of a possible connection between her intrauterine device and her severe pelvic disease that had developed eight years earlier.  Significantly, in *Woodruff*, there was no evidence that the plaintiff or her doctors connected the plaintiff's injuries to her intrauterine device before 1981.

Based on the present record viewed in the light most favorable to the Kings, a reasonable factfinder could conclude that while Mrs. King may have suspected that her symptoms were related to the ObTape, none of her doctors told her that her symptoms were caused by ObTape--not Dr. Meissner, not Dr. Hudnall, and not Dr. Preacher.  Rather, in her at least sixteen visits to these doctors, Mrs. King was diagnosed with infections and suture granulomas, but the doctors did not find any problems with Mrs. King's ObTape, and they did not tell Mrs. King that they had found a problem with her ObTape.  And when Mrs. King expressed frustration to Dr. Preacher over her treatment by Dr. Meissner and asked Dr. Preacher for information on how Dr. Meissner had performed the sling surgery, Dr. Preacher told Mrs. King to see a psychiatrist to address her "anger issues" and refused Mrs. King further treatment until she did so.  In sum, a jury could conclude that Mrs. King exercised reasonable diligence by seeking treatment from three different doctors to determine the cause of her symptoms.  A jury could conclude that three doctors examined Mrs. King at least sixteen times over the course

of two years and found no evidence of problems with her ObTape. A jury could conclude that these doctors did not tell Mrs. King that they found evidence of a problem with her ObTape or that there was a connection between ObTape and Mrs. King's symptoms. A jury could conclude that when Mrs. King asked Dr. Preacher for more information about Dr. Meissner's sling procedure, he told her to see a psychiatrist.  And a jury could conclude that Mrs. King did not have objective facts suggesting a connection between her symptoms and ObTape until she saw a commercial on mesh complications in 2012.  Mentor did not point to any evidence that establishes *as a matter of law* that Mrs. King knew or should have known of a connection between her symptoms and ObTape earlier than 2012 given that none of her doctors told Mrs. King that her symptoms were connected to ObTape.[1]  In sum, as in *Woodruff*, there is a fact question on when Mrs. King learned that her symptoms were caused by ObTape.

Mentor relies on two Fifth Circuit cases to support its argument that Mrs. King's claims accrued when she merely

---

[1] There is evidence that Dr. Preacher told Mrs. King during her third of seven visits that her pelvic pain could have been caused by constipation or by pelvic trauma, including the ObTape.  But Dr. Preacher never found evidence of problems with ObTape and never told Mrs. King that he did.  And when Mrs. King asked for more details on the sling procedure, presumably because she suspected a connection between ObTape and her complications, Dr. Preacher told her to see a psychiatrist to resolve her "anger issues" and refused further treatment unless she did so.  Under these circumstances, Dr. Preacher's hypothesis about potential sources of Mrs. King's pain does not mandate judgment as a matter of law on this issue.

suspected a connection between ObTape and her symptoms—a suspicion that her doctors never confirmed. First, in *Pavich v. Zimmer, Inc.*, the Fifth Circuit found that the plaintiff's claims accrued under Texas law when his doctor told him that his back pain was likely caused by breaks in the surgical rods that had been implanted in his spine. 157 F.3d 903, 1998 WL 612290, at *2 to *3 (5th Cir. 1998) (per curiam). Second, in *Porterfield v. Ethicon, Inc.*, the Fifth Circuit concluded that the plaintiff's cause of action accrued under Texas law when she conducted research to determine if her hernia mesh might be causing her symptoms and then consulted with her primary physician, who suspected that the plaintiff's symptoms were related to her hernia mesh. 183 F.3d 464, 467 (5th Cir. 1999) (per curiam) (applying Texas law); *accord Brandau v. Howmedica Osteonics Corp.*, 439 F. App'x 317, 322 (5th Cir. 2011) (per curiam) (finding that the plaintiff's cause of action accrued under Texas law when her doctor reviewed an x-ray of the plaintiff's knee prosthesis and noticed possible problems with the prosthesis). In these cases, unlike in Mrs. King's case, doctors told the plaintiffs that their injuries were likely caused by the defendants' product. Again, Mentor did not cite any authority suggesting that a plaintiff's mere suspicions, standing alone, are enough to trigger the discovery rule in a case where the plaintiff's doctors never told the plaintiff of a potential

connection between the injury and the product and where a factfinder could conclude that a doctor suggested to the plaintiff that her suspicions were unfounded.

The Court emphasizes that Mrs. King's claims are not barred by the statute of limitations as a matter of law because a genuine fact dispute exists as to whether the injuries Mrs. King had in 2004 and 2005 were caused by ObTape (as opposed to a problem with her sutures or some other problem) and because a genuine fact dispute exists on when Mrs. King knew or should have known that her injuries were connected to ObTape. The circumstances in the present case are distinguishable from other cases the Court has reviewed in this multidistrict litigation proceeding. In most of the other cases, a revision surgery was necessary to repair exposed ObTape, and the undisputed evidence established that the revision surgery was necessary because the ObTape had eroded through the plaintiff's bodily tissues, had become exposed, and had caused adverse symptoms that prompted the plaintiff to seek additional medical treatment from her doctor. In other words, no reasonable person could have concluded in those cases that there was not a connection between ObTape and her injuries sufficient to put her on notice for statute of limitations purposes. Here, the present record does not support a conclusion by the Court that a reasonable factfinder could *only* find such a connection. Instead, the present record would permit

a reasonable factfinder to conclude that for two years following her ObTape implant surgery, Mrs. King experienced complications; although her doctors concluded that she had infections and suture granulomas, they did not find any problems with her ObTape and did not tell her that they did. For all of these reasons, the Court concludes that Mentor has not met its burden of establishing that the statute of limitations bars Mrs. King's claims as a matter of law.[2] Mr. King's derivative loss of consortium claim is likewise not time-barred.

CONCLUSION

As discussed above, Mentor's summary judgment motion (ECF No. 68 in 4:12-cv-133 is denied. Within seven days of the date of this Order, the parties shall notify the Court whether the parties agree to a *Lexecon* waiver.

IT IS SO ORDERED, this 13th day of June, 2016.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[2] This ruling does not mean that Mentor may not eventually prevail on its statute of limitations defense, but it is not entitled to prevail *as a matter of law* based on the present record.